[No. C011854. Third Dist. Nov. 19, 1991.]

WILMA M. RITTENHOUSE, as Administrator, etc., Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR
UNIVERSITY, Real Party in Interest.

## COUNSEL

Candace A. Fry for Petitioner.

No appearance for Respondent.

Downey, Brand, Seymour & Rohwer, Whitney F. Washburn and Lawrence T. Woodlock for Real Party in Interest.

## OPINION

**PUGLIA P. J.**—Wilma M. Rittenhouse (petitioner) is the administrator of the estate of Albert Leonard White (Albert). Petitioner moved in the superior court to quash several deposition subpoenas issued and served by real party in interest Leland Stanford Junior University (Stanford) seeking Albert's medical records in the hands of hospitals and physicians. The motion to quash was denied. Petitioner contends that disclosure of the records in question would violate the physician-patient and psychotherapist-patient privileges, and that the superior court erred in refusing to quash the subpoenas. (Evid. Code, §§ 990 et seq., 1010 et seq.) (Statutory references to sections of an undesignated code are to the Evidence Code.) We agree, and shall order a writ of mandate to issue.

Albert was the son of Alice Marie White (Alice), who died in 1983. In 1984 the Public Administrator of Sacramento County was appointed administrator with will annexed of Alice's estate. The will, executed by Alice in 1962, was admitted to probate. That will established a testamentary trust, and directed the trustee to apply the income and principal to the support of

Albert during his life. Upon Albert's death any remaining trust assets were to devolve on Stanford. In 1985, the public administrator discovered in Alice's safe deposit box a document, handwritten by Alice and dated August 1, 1981, which petitioner contends is a holographic will superseding the 1962 will and bequeathing Alice's entire estate to Albert outright. Albert died in 1987. In December 1990, petitioner, one of Albert's heirs, filed a petition for probate of the holographic instrument.

At the time the petition to probate the holographic will was filed, the public administrator was also the administrator of Albert's estate. Both the public administrator and Stanford opposed petitioner's attempt to probate the handwritten document on the ground that only the personal representative of Albert's estate has standing to pursue such an action. Simultaneously, the public administrator also sought to resign as administrator of Albert's estate, no doubt perceiving a conflict of interest between that role and his concurrent obligation to represent Alice's estate. In March 1991, the court relieved the public administrator and in his stead designated petitioner as Albert's special administrator. This order rendered moot Stanford's objection to petitioner's standing to seek probate of Alice's 1981 holographic will.

Upon conclusion of these preliminaries, Stanford filed a formal contest to the probate of the holographic will. Stanford challenged the petition for probate on the ground, inter alia, that in 1981 Albert was suffering from a mental disability and that the handwritten document was not intended by Alice, who was aware of Albert's alleged disability, to be a testamentary instrument. Rather, Stanford suggests, it was merely a letter designed to reassure Albert that he had been provided for. It is Stanford's contention that Alice lacked confidence in Albert's capacity to manage his financial affairs, and therefore would not have bequeathed her entire estate to him. The subpoenaed medical records, which may contain information regarding Albert's mental condition, were sought by Stanford to support this argument.

Petitioner moved to quash the subpoenas. (See Code Civ. Proc., §§ 1985.3, subd. (g), 1987.1; *Slagle* v. *Superior Court* (1989) 211 Cal.App.3d 1309 [260 Cal.Rptr. 122].) She contends that the physician-patient and psychotherapist-patient privileges apply to these records, that the privileges survive Albert's death, and that she, as the personal representative of Albert's estate, is the holder of the privileges and may assert them. Stanford does not dispute the privileged nature of the subpoenaed documents. ■ Rather, it argues that the pertinent Evidence Code provisions should be construed to mean that the personal representative of a deceased patient may only shield those materials from disclosure upon a showing that the interest of the estate

in maintaining their confidentiality outweighs the benefits to be derived from disclosure. For the reasons which follow, we reject Stanford's position.[1]

Historically, the physician-patient privilege survived the death of the patient, and evidence of communications to which it applied was generally inadmissible in post mortem judicial proceedings. (See *Keast* v. *Santa Ysabel Gold Mining Co.* (1902) 136 Cal. 256 [68 P. 771]; *Harrison* v. *Sutter St. Ry. Co.* (1897) 116 Cal. 156 [47 P. 1019]; *In re Flint* (1893) 100 Cal. 391 [34 P. 863].) With the adoption of the Evidence Code this rule underwent certain modifications. Section 994 now provides that the privilege may be claimed only by a "holder," a person authorized by the holder, or the physician who received the communication. Section 993 defines "holder" as being the patient, a guardian or conservator, or, in subdivision (c), "The personal representative of the patient if the patient is dead." Only a holder may waive the privilege. (§ 912.)[2]

Thus, petitioner, as Albert's personal representative, is the statutorily designated holder of the privilege and may claim or waive it. The Evidence Code itself places no conditions or restrictions on this authority, and in the absence of a specific statutory exception or waiver petitioner may preserve the confidentiality of Albert's confidential communications to his health care providers. The statutory language is clear and unambiguous. Accordingly this would ordinarily be the end of our inquiry. (See *Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 96 [255 Cal.Rptr. 670, 767 P.2d 1148]; *Jiminez* v. *Honig* (1987) 188 Cal.App.3d 1034, 1040 [233 Cal.Rptr. 817].)

Even if we shared Stanford's perception that the statutory language is ambiguous and considered extraneous matter to construe it, we would still find unpersuasive Stanford's claim that the personal representative of a deceased patient must make an affirmative showing of benefit to the estate in order to justify claiming the privilege. This assertion rests on Stanford's

---

[1]The statutory language governing respectively the physician-patient privilege and the psychotherapist-patient privilege, including the exceptions thereto and definitions of who is a "holder" entitled to claim them, is virtually identical. (Compare § 990 et seq., with § 1010 et seq.) In the interest of textual conciseness, we shall henceforth refer only to the physician-patient privilege in our analysis of the parties' contentions. However, all discussion and conclusions are equally applicable to, and should be read to include as well psychotherapist-patient privilege.

[2]The Evidence Code does not expressly deal with the question of what happens to the privilege after the estate is closed and there is no longer a personal representative. However, other authorities have concluded that at such time, there being no "holder" who may claim the privilege, it ceases to exist. (See *Boling* v. *Superior Court* (1980) 105 Cal.App.3d 430, 440 [164 Cal.Rptr. 432]; 2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1982) § 37.1, p. 1358; cf. Evid. Code § 916, subd. (a).)

interpretation of the Law Revision Commission's Comments to section 993. We recognize that in construing and applying the Evidence Code, those comments are to be taken not merely as expressions of the commission's understanding, but also as statements of legislative intent. (*Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 158, fn. 4 [98 Cal.Rptr. 649, 491 P.2d 1].) However, the meaning Stanford assigns to the comment to section 993 is, in our view, illogical and unsupportable. The particular language relied on reads: "The provision making the personal representative of the patient the holder of the privilege when the patient is dead may change California law. The existing law may be that the privilege survives the death of the patient in some cases and that no one can waive it on behalf of the patient. . . . Sections 993 and 994 enable the personal representative to protect the interest of the patient's estate in the confidentiality of these statements and to waive the privilege when the estate would benefit by waiver. When the patient's estate has no interest in preserving confidentiality, or when the estate has been distributed and the representative discharged, the importance of providing complete access to information relevant to a particular proceeding should prevail over whatever remaining interest the decedent may have had in secrecy." (Cal. Law Revision Com. com., Deering's Ann. Evid. Code, § 993 (1986) p. 167)

Stanford would have us construe this comment by the commission explaining its reasons for including subdivision (c) in section 993 as indicating an intent that the personal representative be required to make an affirmative showing as a prerequisite to claiming the privilege that the benefit to the estate in maintaining confidentiality outweighs the interest in disclosure. No such showing was made here, since petitioner's position is that the privilege is her's to claim, and in doing so she has no obligation to justify or explain her action. We agree with petitioner. The only reasonable reading of the comment is that the commission was concerned with the potential adverse consequences for the estate created by the possibility that under prior law the privilege could not be waived by anyone after the patient's death, even when doing so would benefit the estate. To overcome this difficulty, the personal representative was designated as a holder, thereby granting that person the same discretion possessed by all other statutorily recognized holders to claim or waive the privilege. (§ 912.)

In essence, Stanford is advocating that section 993 be interpreted by virtue of the comment's language as meaning that there is no physician-patient privilege after the patient's death, *unless* the personal representative demonstrates an overriding interest on the part of the estate in maintaining

confidentiality. Such a reading would lead to the anomalous result that this particular category of holder, unlike any other recognized by the code, would bear an initial burden beyond establishing that the subject communications are within the scope of the privilege. ■ As a general rule, privileged communications are protected regardless of their relevancy to the issues in the litigation, and despite any private or public interest in disclosure. (See *Koshman* v. *Superior Court* (1980) 111 Cal.App.3d 294, 297 [168 Cal.Rptr. 558].) ■ In no other circumstance involving such a communication is the court authorized to engage in a "balancing" process such as that advocated by Stanford. We believe that if the Law Revision Commission or the Legislature had intended such a unique treatment of this specific aspect of the code's provisions, such purpose would have found expression in the statute itself.

■ Stanford also argues that granting the personal representative unfettered control over the decision to exercise the privilege would not advance the policy underlying evidentiary rules protecting such confidential communications from disclosure. The obvious objective of the physician-patient privilege is to foster open communication between patients and their health care providers. Without assurances that their revelations would be safe from public exposure, persons in need of care would often be discouraged from the open and complete disclosure of private information which is essential to effective treatment. (See *People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511 [194 Cal.Rptr. 431, 668 P.2d 738]; *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669, 678-679 [156 Cal.Rptr. 55].) Stanford argues that when the patient is no longer alive, that policy is not served by preserving the shield of confidentiality. We disagree. The possibility of posthumous exposure of sensitive, highly personal, and sometimes embarrassing information about one's physical or mental condition, information which often involves surviving family members or other individuals with whom the patient has had contacts, would hinder the free communication between patient and professional which the privilege is designed to encourage.

■ We read section 993, subdivision (c) and the Law Revision Commission Comment thereto as affirming the continued viability of the physician patient-privilege after the death of the patient, and granting the personal representative the same right to claim or waive the privilege as any other holder.The language in the comment upon which Stanford relies does not impose on the representative the burden to "justify" either choice. Rather, the commission comment merely explains that subdivision (c) fills a need to designate someone who can function as a "holder" after the patient's death.

An opinion of the Attorney General supports our analysis. Responding to a legislative inquiry regarding access by third parties to a deceased patient's records in the possession of a nursing home, the Attorney General concluded that the privilege survives the patient's death, that medical records such as those at issue here are within the scope of the privilege, and that they remain immune from discovery unless the personal representative, as the holder, waives the privilege. (69 Ops. Atty.Gen. 14 at pp. 17-19 (1986).) As the opinion points out, section 994 entitles the holder to claim the privilege, and the personal representative is the holder when the patient is dead. Until the personal representative by "word or deed" waives the privilege, it remains inviolate.

■ Finally, we consider Stanford's contention that there has indeed been such a waiver. Section 996 provides that the privilege is waived as to any communication relevant to an issue ". . . concerning the condition of the patient if such issue has been tendered by. . ." the patient or someone claiming through the patient. Stanford argues that by seeking probate of the holographic will, petitioner has placed Albert's mental condition in issue because that condition is relevant to Alice's intent. If this reasoning were adopted, the physical and mental condition of all beneficiaries would necessarily be placed in issue any time a will is offered for probate, with the consequence that all their medical records including privileged communications would be available to the contestants. We reject Stanford's argument out of hand. The issue of Albert's mental health was injected into these proceedings by Stanford itself, not petitioner. Petitioner has done nothing more than respond to factual allegations made in Stanford's contest. That is not a "tender" within the meaning of section 996. (Cf. *Simek* v. *Superior Court* (1981) 117 Cal.App.3d 169, 173-175 [172 Cal.Rptr. 564]; *Koshman* v. *Superior Court, supra,* 111 Cal.App.3d at p. 298.)

■ We conclude the medical records sought in Stanford's deposition subpoenas are privileged, that petitioner as the holder of the privilege properly invoked it, and that there has been no waiver. It follows that the superior court erred in denying the motion to quash. We have previously notified the parties that we are considering issuing a peremptory writ of mandate in the first instance, and shall now do so. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying petitioner's motion to quash real party in

interest Stanford University's deposition subpoenas, and enter an order granting said motion.

Sparks, J., and Nicholson, J., concurred.