[No. B138779. Second Dist., Div. Four. June 28, 2000.]

STUART J. MARYLANDER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
OFFICE OF STATEWIDE HEALTH PLANNING AND DEVELOPMENT
et al., Real Parties in Interest.

## COUNSEL

Manatt, Phelps & Phillips, David Elson, Kathrin A. Wanner and Mark E. Goldman for Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Manuel M. Medeiros, Assistant Attorney General, Andrea Lynn Hoch and Tom Blake, Deputy Attorneys General, for Real Parties in Interest.

## OPINION

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

A defendant in pending civil litigation seeks to compel discovery from a state agency of records that are relevant to his defense in the underlying case. The records are memoranda from the state agency to the Governor's Office. The trial court denied a motion to compel production, agreeing with the state agency that such memoranda are absolutely privileged on the grounds that correspondence to the Governor is exempt from disclosure as a public record, and a common law "deliberative process" privilege absolutely protects such interoffice communications in order to facilitate candid advice and disclosures to the Governor. We hold the trial court erred, because the applicable privilege is not absolute but conditional under Evidence Code section 1040, subdivision (b)(2), which required the trial court to consider the party's need for disclosure in the interest of justice, and to determine whether that interest is outweighed by the public interest in preserving confidentiality. We direct the trial court to conduct further proceedings in accordance with Evidence Code section 1040.

### Factual and Procedural Background

Petitioner Stuart J. Marylander is the defendant in a civil action alleging misrepresentation, concealment, and breach of fiduciary duty. The plaintiff is the chapter 11 trustee in bankruptcy for Triad Healthcare, a nonprofit corporation (Triad) of which petitioner was formerly an officer and employee. Triad was formed by petitioner for the purpose of acquiring two hospitals from Nu-Med Corporation (Nu-Med). At the time petitioner formed Triad, petitioner was an officer and director of Nu-Med. The theory of the complaint by the trustee on behalf of Triad is that the purchase price paid by Triad for the two hospitals was far in excess of fair market value, and that this ultimately led to Triad's default on its loan obligations in July 1993. The complaint alleges that petitioner failed to disclose to Triad that the two hospitals had been previously appraised at significantly lower values, that the price was in excess of all other available comparable sales for similar hospitals, and that due diligence on behalf of Triad was not exercised prior to the purchase.

The real parties in interest in the present writ proceeding are the State of California and its agency, the Office of Statewide Health Planning and Development (OSHPD). OSHPD was involved in the purchase of the hospitals because OSHPD insured (guaranteed) the loan by which Triad obtained the purchase price, pursuant to OSHPD's California Health Facilities Construction Loan Insurance Program (Cal-Mortgage program). Triad subsequently defaulted on its loan obligations. OSHPD, obligated on its guaranty of Triad's loan, is the largest creditor in Triad's bankruptcy estate, with a bankruptcy claim of approximately $174 million.

Petitioner is defending the complaint in part on the ground that "Triad's inability to meet its debt service obligations was not the consequence of wrongdoing, but instead resulted from factors which Marylander and Triad's Board could not have foreseen—including unreasonable conduct by OSHPD which caused much of Triad's losses and stymied Triad's efforts to restore the hospitals' profitability."

During the course of discovery, petitioner was informed of the existence of a series of written communications known as Governor Action Requests (GAR's). These were memoranda prepared by officials of OSHPD or the California Health and Welfare Agency, and directed to the Governor or to the Health and Welfare Secretary, between August 1993 and October 1995, apparently addressing Triad's financial problems.

Petitioner served on OSHPD a deposition subpoena (Code Civ. Proc., § 2020, subd. (d)(1)) requesting production of the GAR's, which were

identified specifically by date and author, and of any responses thereto. OSHPD declined to produce them, claiming they were privileged under a deliberative process privilege.

Petitioner filed a motion to compel production. Petitioner contended the GAR's are relevant to petitioner's defense concerning causation and damages, and therefore are discoverable. OSHPD does not deny that the GAR's are relevant to the pending litigation.

Petitioner challenged OSHPD to show pursuant to Evidence Code section 1040, subdivision (b)(2) that the GAR's were acquired in confidence or that the necessity for preserving their confidentiality outweighed petitioner's interest in disclosure. OSHPD replied it was relying upon a common law deliberative process privilege, which it contended was codified in Government Code section 6254, subdivision (*l*), which exempts "[c]orrespondence of and to the Governor or employees of the Governor's office" from disclosure as a public record.

The trial court denied petitioner's motion to compel production of the GAR's. The court commented it did not need to examine the GAR's in camera; rather it was persuaded that OSHPD had "made [a] foundation to show the privileges or immunities from discovery or disclosure that they've talked about here." Petitioner's counsel asked if the trial court was holding that "the [deliberative] process privilege, the government's correspondence privilege, they call it, is applicable to these documents," to which the court replied, "Correct."

Petitioner filed in this court a petition for a writ of mandate to compel respondent trial court either to compel production or to require OSHPD to make the showing required by Evidence Code section 1040, subdivision (b)(2) that the public interest in preserving confidentiality outweighs petitioner's interest in disclosure. We issued an order to show cause. (See *Shepherd v. Superior Court* (1976) 17 Cal.3d 107, 116, 123 [130 Cal.Rptr. 257, 550 P.2d 161] [writ review of order erroneously sustaining absolute privilege where only conditional privilege applied]; *Oceanside Union School Dist. v. Superior Court* (1962) 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439] [writ review of discovery order raising question of first impression of public importance].) OSHPD filed a "return by way of demurrer" contending that the "Governor's correspondence" exemption in Government Code section 6254, subdivision (*l*), and the common law deliberative process privilege are controlling.

## Discussion

1. *The only applicable privilege is the official information privilege in Evidence Code section 1040, subdivision (b)(2), which requires the trial court to balance the necessity for preserving confidentiality against the litigant's interest in disclosure.*

Petitioner is the defendant in a pending civil action for misrepresentation, concealment, and breach of fiduciary duty. Petitioner is entitled by law to "obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., §§ 2017, subd. (a) [right to discovery], 2020, subds. (a)(2), (d)(1) [procedure to obtain business records from nonparty].) OSHPD does not dispute the relevance of the requested documents, since the petition alleges without contradiction that petitioner contends "Triad's inability to meet its debt service obligations was not the consequence of wrongdoing, but instead resulted from factors which Marylander and Triad's Board could not have foreseen—including unreasonable conduct by OSHPD which caused much of Triad's losses and stymied Triad's efforts to restore the hospitals' profitability. . . . OSHPD previously had identified the Action Requests as relevant to OSHPD's claimed losses."

Instead, OSHPD by way of demurrer contends only that the documents are absolutely privileged and hence not discoverable. (See, e.g., *Rittenhouse v. Superior Court* (1991) 235 Cal.App.3d 1584, 1590 [1 Cal.Rptr.2d 595] [communications which are absolutely privileged, as distinguished from conditionally privileged based upon balancing the need for confidentiality against the litigant's interest in disclosure, are protected against discovery regardless of their relevance to the issues in the litigation and despite a litigant's interest in disclosure].) There is no merit to OSHPD's claim of an absolute privilege. The only applicable privilege, the privilege for official information in Evidence Code section 1040, subdivision (b)(2), is a conditional one, which requires the trial court to balance the interests.

OSHPD misplaces reliance on Government Code section 6254, subdivision (*l*), which exempts "[c]orrespondence of and to the Governor or employees of the Governor's office" from disclosure *under the California Public Records Act, Government Code sections 6250-6268.* (See *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1336-1337 [283 Cal.Rptr. 893,

813 P.2d 240]; *California First Amendment Coalition v. Superior Court* (1998) 67 Cal.App.4th 159, 167-169 [78 Cal.Rptr.2d 847].) The exemptions in the Public Records Act are in the context that, unless exempted, all public records may be examined by any member of the public, often the press, but conceivably any person with no greater interest than idle curiosity. (Gov. Code, §§ 6252, subd. (f), 6253, subds. (a), (b), 6258.) But *a party to pending litigation* has a stronger and different type of interest in disclosure. (Code Civ. Proc., § 2017, subd. (a).) Accordingly, the Public Records Act expressly states that its provisions "shall not be deemed in any manner to affect . . . the rights of litigants . . . under the laws of discovery of this state." (Gov. Code, § 6260.) The exemptions contained in the Public Records Act simply do not apply to the issue whether records are privileged *in pending litigation* so as to defeat *a party's* right to *discovery*. (*Shepherd v. Superior Court, supra*, 17 Cal.3d 107, 123-124.)

In litigation, the courts and parties must look to the Evidence Code to determine whether records are privileged and therefore not discoverable under Code of Civil Procedure section 2017, subdivision (a). There is no specific Governor's correspondence privilege in the Evidence Code comparable to Government Code section 6254, subdivision (*l*). Instead, Evidence Code section 1040, the official information privilege, " 'represents *the exclusive means by which a public entity may assert a claim of governmental privilege based on the necessity for secrecy.*' " (*Shepherd v. Superior Court, supra*, 17 Cal.3d at p. 123, some italics added; *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 539-540 [113 Cal.Rptr. 897, 522 P.2d 305].)

Evidence Code section 1040 provides in pertinent part, "(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made. [¶] (b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and: (1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . . In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

The official information privilege in Evidence Code section 1040, subdivision (b)(2), is expressly conditional, not absolute.[1] If the public entity satisfies the threshold burden of showing that the information was acquired in confidence, the statute requires the court next to *weigh* the interests and to sustain the privilege only if " 'there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice.' " (*Shepherd v. Superior Court, supra,* 17 Cal.3d at pp. 123-125; see *PSC Geothermal Services Co. v. Superior Court* (1994) 25 Cal.App.4th 1697, 1714 [31 Cal.Rptr.2d 213]; *Rubin v. City of Los Angeles* (1987) 190 Cal.App.3d 560, 585-587 [235 Cal.Rptr. 516]; *CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 656 [230 Cal.Rptr. 362, 725 P.2d 470].) A trial court commits error under this section if the court fails to make the threshold determination or fails to engage in the process of balancing the interests. (*Shepherd v. Superior Court, supra,* 17 Cal.3d at p. 125; *PSC Geothermal Services Co. v. Superior Court, supra,* 25 Cal.App.4th at p. 1714; *Rubin v. City of Los Angeles, supra,* 190 Cal.App.3d at p. 586.)

In an attempt to avoid the balancing of interests requirement in Evidence Code section 1040, subdivision (b)(2), OSHPD contends it is relying on a common law privilege, sometimes referred to as the deliberative process privilege or executive privilege, which is based primarily on the need for the Governor to receive candid advice or information, and which has constitutional overtones arising from the executive power. (See generally *Times Mirror Co. v. Superior Court, supra,* 53 Cal.3d 1325, 1339-1344 & fn. 10; *California First Amendment Coalition v. Superior Court, supra,* 67 Cal.App.4th 159, 169-172; see also *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 540-541 [85 Cal.Rptr.2d 257, 976 P.2d 808] (conc. opn. of Brown, J.).)

■ But the Legislature has decreed there are no privileges except as provided by statute. (Evid. Code, § 911.) Courts are not free to create additional privileges by common law. (*Cloud v. Superior Court* (1996) 50 Cal.App.4th 1552, 1558-1559 [58 Cal.Rptr.2d 365].)

■ In rare instances, courts have declared a privilege compelled by constitutional considerations even where not specifically provided by statute. (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977] [state constitutional right to privacy compelled limited privilege against disclosure of bank customer records despite exclusivity of the Evidence Code on the subject of privileges]; *Mitchell v.*

---

[1]Subdivision (b)(1) of Evidence Code section 1040, an absolute privilege, does not apply. An exemption from disclosure under the Public Records Act is not a statute *forbidding* disclosure within the meaning of Evidence Code section 1040, subdivision (b)(1). (*Shepherd v. Superior Court, supra,* 17 Cal.3d 107, 123-124; Gov. Code, § 6260.)

*Superior Court* (1984) 37 Cal.3d 268, 274-284 [208 Cal.Rptr. 152, 690 P.2d 625] [First Amendment considerations compelled qualified privilege of newspaper reporter to refuse to disclose sources]; see also *Welfare Rights Organization v. Crisan* (1983) 33 Cal.3d 766, 769 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214] [unless a privilege is expressly or impliedly based on statute, its existence may be found "only if required by constitutional principles, state or federal"; statutory basis found]; *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 373 [20 Cal.Rptr.2d 330, 853 P.2d 496] [courts may not add to the statutory privileges "except as required by state or federal constitutional law"; statutory basis found].)

But even in those rare cases where constitutional considerations require judicial declaration of a privilege not based on statute, the courts have utilized a balancing of the interests approach, and eschewed creating an absolute privilege. In *Valley Bank of Nevada v. Superior Court, supra,* 15 Cal.3d at pages 657-658, the court balanced the constitutional interest of bank customers to maintain reasonable privacy regarding their financial affairs against the right of civil litigants to discover relevant facts. The court "readily acknowledge[d] that relevant bank customer information should not be wholly privileged and insulated from scrutiny by civil litigants," noting that " '[i]n order to facilitate the ascertainment of truth and the just resolution of legal claims, the [civil discovery statute] clearly exerts a justifiable interest in requiring a businessman to disclose communications, confidential or otherwise, relevant to pending litigation.' " In *Mitchell v. Superior Court, supra,* 37 Cal.3d at page 276, the court weighed the First Amendment values furthered by protecting the confidentiality of a news reporter's sources against "the parallel importance of the policy favoring full disclosure of relevant evidence." It concluded, "there is neither an absolute duty to disclose nor an absolute privilege to withhold, but instead a qualified privilege against compelled disclosure which depends on the facts of each particular case." (*Ibid.*)

OSHPD's contention that the deliberative process privilege has been "judicially recognized" misses the mark, because none of these authorities declares it to be an absolute privilege making communications immune from disclosure to a litigant without any weighing of the need for the evidence in the pending litigation. (*Times Mirror Co. v. Superior Court, supra,* 53 Cal.3d 1325, 1339-1347 [action under Public Records Act; exemption under Gov. Code, § 6255, which protects the deliberative process, involves balancing the interests]; *California First Amendment Coalition v. Superior Court, supra,* 67 Cal.App.4th 159, 172 [action under Public Records Act; intergovernmental communications between the Governor and staff are not within Governor's correspondence privilege in Gov. Code, § 6254, subd. (*l*), but must

instead be analyzed under Gov. Code, § 6255, which requires balancing the interests; public interest in preserving confidentiality of evaluations of potential gubernatorial appointees was great, but "we must still consider whether the public interest in disclosure is greater. Not every disclosure which hampers the deliberative process implicates the deliberative process privilege. Only if the public interest in nondisclosure clearly outweighs the public interest in disclosure does the deliberative process privilege spring into existence" (*California First Amendment Coalition v. Superior Court, supra,* 67 Cal.App.4th at p. 172); *Regents of University of California v. Superior Court, supra,* 20 Cal.4th 509, 540-541 (conc. opn. of Brown, J.) [dictum, merely suggesting that the described policies favoring the deliberative process privilege be considered in construing what is a "meeting" for the purpose of an open meeting law]; see also *United States v. Nixon* (1974) 418 U.S. 683, 705-713 [94 S.Ct. 3090, 3106-3110, 41 L.Ed.2d 1039] [the President of the United States could be compelled to produce, for the purpose of evidence in a pending criminal proceeding, audiotapes and documents concerning conversations with his closest advisors; the President has a presumptive privilege based on the necessity for candor between the President and his advisers, but even assuming it is of constitutional dimension based on inherent powers of the chief executive or separation of executive and judicial powers, it is not absolute; the generalized assertion of privilege must yield to a demonstrated specific need for evidence in a pending criminal trial].)

We conclude, therefore, that the trial court was required to analyze OSHPD's claim of privilege by applying Evidence Code section 1040, subdivision (b)(2). The standards and procedures contained therein are adequate to resolve the discovery dispute even if the privilege claim has constitutional overtones. The issue is whether "[d]isclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice."

*2. The trial court failed to comply with Evidence Code section 1040.*

Petitioner specifically identified the GAR's which he seeks, and OSHPD has not denied that the GAR's are relevant to the pending litigation. The burden is on OSHPD to prove the elements of privilege in Evidence Code section 1040, subdivision (b)(2). (*Gonzalez v. Superior Court* (1995) 33 Cal.App.4th 1539, 1548 [39 Cal.Rptr.2d 896]; *People ex rel. Dept. of Public Works v. Glen Arms Estate, Inc.* (1964) 230 Cal.App.2d 841, 847 & fn. 1 [41 Cal.Rptr. 303].)

The threshold determination is whether the information in the GAR's was acquired in confidence. If the information was acquired in confidence,

the trial court next must balance the interests to determine whether the necessity for preserving the confidentiality of the information outweighs the necessity for disclosure in the interest of justice. (*Shepherd v. Superior Court, supra*, 17 Cal.3d 107, 125-126.) Implicit in each of these assessments is consideration of the consequences to the litigant of nondisclosure and the consequences to the public of disclosure. Consideration of the consequences to the litigant of nondisclosure involves familiar issues concerning the importance of the information to the fair presentation of the litigant's case, the availability of the material to the litigant by other means, and the effectiveness and relative difficulty of such other means. (*Id.* at p. 126.) Consideration of the consequences to the public involves matters relating to the effect of disclosure on public processes and procedures. (*Ibid.*) Disclosure of the information to the trial judge, in camera, may be necessary to assist the judge to make those determinations. (*People ex rel. Dept. of Public Works v. Glen Arms Estate, Inc., supra*, 230 Cal.App.2d at p. 847, fn. 1; *Torres v. Superior Court* (2000) 80 Cal.App.4th 867, 873 [95 Cal.Rptr.2d 686]; Evid. Code, § 915, subd. (b).)

 In the present case, the information was not disclosed to the trial court in camera. The trial court never examined the GAR's to evaluate the potential necessity in the interest of justice that the GAR's be disclosed in order to enable petitioner to present his defense in the pending litigation. The record shows that the trial court treated the privilege claim as absolute based on Government Code section 6254, subdivision (*l*), without performing the necessary steps of evaluating petitioner's need for the information and weighing that against the general interest in nondisclosure arising from the policy of encouraging candid advice to the Governor. Therefore, the trial court erred, and the matter must be remanded for further proceedings. (*Shepherd v. Superior Court, supra*, 17 Cal.3d at p. 125 [trial court failed to make threshold determination whether information was acquired in confidence]; *Rubin v. City of Los Angeles, supra*, 190 Cal.App.3d at p. 586 [same]; *PSC Geothermal Services Co. v. Superior Court, supra*, 25 Cal.App.4th at p. 1714 & fn. 15 [there was nothing in the record to suggest the trial court undertook the two-stage analysis of confidentiality and public interest necessary to support its nondisclosure order].)

We do not attempt to control in advance the trial court's exercise of its discretion. On the one hand, there is a recognized public interest in preserving the confidentiality of communications to the Governor from officials of state agencies concerning the state's business. Disclosure might " 'expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.' " (*Times Mirror Co. v. Superior Court, supra*, 53

Cal.3d 1325, 1342; *California First Amendment Coalition v. Superior Court, supra,* 67 Cal.App.4th 159, 170-172.) On the other hand, even great public interest in preserving confidentiality may be outweighed in particular circumstances by a litigant's need for the evidence in pending litigation. (*United States v. Nixon, supra,* 418 U.S. 683, 712 [94 S.Ct. 3090, 3109] ["The interest in preserving confidentiality is weighty indeed and entitled to great respect. However, we cannot conclude that advisers will be moved to temper the candor of their remarks by the infrequent occasions of disclosure because of the possibility that such conversations will be called for in the context of a criminal prosecution"].) The passage of time since these communications may also reduce the concern that disclosure now would impair the deliberative process. (See *Rubin v. City of Los Angeles, supra,* 190 Cal.App.3d 560, 587.)

Here, the trial court failed to consider petitioner's need for the evidence, nor did it even examine the evidence to evaluate its potential importance to the litigation.[2]

## DISPOSITION

The order to show cause, having served its purpose, is discharged. Let a peremptory writ issue directing the trial court to vacate its order denying petitioner's motion to compel production of records and to conduct further proceedings consistent with this opinion. Costs are awarded to petitioner.

Epstein, J., and Hastings, J., concurred.

---

[2]In two cases under the Public Records Act involving communications to the Governor, evaluated under the balancing test in Government Code section 6255, the courts were able to determine without viewing the contents of the communications in camera, that the general interest of the press in disclosure was outweighed by the necessity for confidentiality. (*California First Amendment Coalition v. Superior Court, supra,* 67 Cal.App.4th 159, 174; *Wilson v. Superior Court* (1996) 51 Cal.App.4th 1136, 1144 [59 Cal.Rptr.2d 537].) Here, the communications are alleged to be relevant to a party's defense. in litigation, and the court probably cannot weigh petitioner's need for the information without knowing the contents.