EDMUND G. BROWN JR. Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE PETER MOOCK, COUNTY COUNSEL, COUNTY OF KINGS, has requested an opinion on the following questions:
1. When the amount of a documentary transfer tax appears on a separate paper rather than on the recorded property conveyance document, is the county recorder required to make a copy of the separate paper before returning it to the recording party?
2. When the county recorder has not made a copy of the separate paper showing the documentary transfer tax amount, but the recorder's accounting records include a payment receipt showing the tax amount, is the recorder's receipt subject to inspection under the Public Records Act? *Page 2 
 CONCLUSIONS
1. When the amount of a documentary transfer tax appears on a separate paper rather than on the recorded property conveyance document, the county recorder is not required to make a copy of the separate paper before returning it to the recording party.
2. When the county recorder has not made a copy of the separate paper showing the documentary transfer tax amount, but the recorder's accounting records include a payment receipt showing the tax amount, the recorder's receipt is subject to inspection under the Public Records Act.
 ANALYSIS
The Legislature has enacted the Documentary Transfer Tax Act (Rev. Tax. Code, §§ 11901-11934),[1] allowing cities and counties to impose a tax, known as the "documentary transfer tax," upon the recording of documents by which interests in real property are conveyed. With respect to counties, subdivision (a) of section 11911 provides:
 The board of supervisors of any county or city and county, by an ordinance adopted pursuant to this part, may impose, on each deed, instrument, or writing by which any lands, tenements, or other realty sold within the county shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) exceeds one hundred dollars ($100) a tax at the rate of fifty-five cents ($0.55) for each five hundred dollars ($500) or fractional part thereof.
We have previously examined the requirements of this statutory scheme and its predecessor statutes in a variety of contexts. (See85 Ops.Cal.Atty.Gen. 235 (2002); 82 Ops.Cal.Atty.Gen. 56 (1999);68 Ops.Cal.Atty.Gen. 71 (1985); 62 Ops.Cal.Atty.Gen. 87 (1979);51 Ops.Cal.Atty.Gen. 62 (1968).) *Page 3 
The two questions presented for resolution concern the related provisions of sections 11932 and 11933. Section 11932 provides:
 If a county has imposed a tax pursuant to this part, every document subject to tax which is submitted for recordation shall show on the face of the document the amount of tax due and the incorporated or unincorporated location of the lands, tenements or other realty described in the document. If the party submitting the document for recordation so requests, the amount of tax due shall be shown on a separate paper which shall be affixed to the document by the recorder after the permanent record is made and before the original is returned as specified in Section 27321 of the Government Code.[2]
Section 11933 states:
 If a county has imposed a tax pursuant to this part, the recorder shall not record any deed, instrument or writing subject to the tax imposed pursuant to this part, unless the tax is paid at the time of recording. A declaration of the amount of tax due, signed by the party determining the tax or his agent, shall appear on the face of the document or on a separate paper in compliance with Section 11932, and the recorder may rely thereon; provided he has no reason to believe that the full amount of the tax due has not been paid. The declaration shall include a statement that the consideration or value on which the tax due was computed was, or that it was not, exclusive of the value of a lien or encumbrance remaining on the interest or property conveyed at the time of sale. Failure to collect the tax due shall not affect the constructive notice otherwise imparted by recording a deed, instrument or writing.
1. Duty to Make A Copy
Sections 11932 and 11933 thus authorize the use of a "separate paper" to show the amount of tax due rather than having that amount shown on the face of the conveyance document submitted for recordation. After the conveyance document is recorded, the separate paper is attached to the document and returned to the recording party. The first question asks whether the recorder must make a copy of the separate paper before returning it to the recording party. We conclude that the recorder has no such duty. *Page 4 
In analyzing the terms of sections 11932 and 11933, we are guided by well recognized principles of statutory interpretation. The "fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citations.]" (Day v.City of Fontana (2001) 25 Cal.4th 268, 272.) Analysis starts by examining the actual words of the statute, giving them their usual, ordinary meaning. (Garcia v. McCutchen (1997) 16 Cal.4th 469, 476.) "If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citations.]" (Hunt v. Superior Court (1999) 21 Cal.4th 984, 1000; accord, Hoechst Celanese Corp. v. Franchise Tax Bd. (2001)25 Cal.4th 508, 519.)
Here, we find that the language of sections 11932 and 11933 is clear and unambiguous. No mandate is contained therein for the recorder to make a copy of the separate paper prior to returning it to the recording party. Instead, the recorder's statutory duties are to record the conveyance document and then attach the separate paper to the document for transmission to the recording party.
No other statute imposes a duty upon the county recorder to make a copy of the separate paper showing the amount of the documentary transfer tax prior to returning it to the recording party. If the Legislature wishes to require the performance of such an official duty, it knows how to do so. (See, e.g., Gov. Code, § 6253 [copy of public record to be made upon request]; Safer v. Superior Court (1975)15 Cal.3d 230, 237-238; Board of Trustees v. Judge (1975)50 Cal.App.3d 920, 927; 73 Ops.Cal.Atty.Gen. 13, 23 (1990).)
We conclude in answer to the first question that when the amount of a documentary transfer tax appears on a separate paper rather than on the recorded property conveyance document, the county recorder is not required to make a copy of the separate paper before returning it to the recording party.
2. Disclosure of Accounting Records
Where the separate paper has been returned to the recording party without the county recorder's having made a copy of it, the recorder will still have evidence of the amount of the tax paid in his or her accounting records, such as a tax receipt. Are these accounting records subject to inspection pursuant to the California Public Records Act (Gov. Code, §§ 6250-6276.48; "Act")[3] and its requirements? We conclude that such records would be subject to inspection. *Page 5 
The Act's purpose is to facilitate the people's right to monitor their government's activities, under the principle that "access to information concerning the conduct of the public's business is a fundamental and necessary right of every person in this state." (§ 6250; see Cal. Const., art. I, § 3, subd. (b); Times Mirror Co. v. Superior Court
(1991) 53 Cal.3d 1325, 1338-1339; CBS, Inc. v. Block (1986)42 Cal.3d 646, 651-655; Marylander v. Superior Court (2000) 81 Cal.App.4th 1119,1125; 73 Ops.Cal.Atty.Gen. 236, 237 (1990).)
Under the Act, most records of state and local public agencies are subject to public disclosure. (§ 6253, subd. (a);86 Ops.Cal.Atty.Gen. 132, 133 (2003).) While the Act contains several exemptions permitting certain records to be kept confidential (see, e.g., §§ 6254, 6254.1, 6254.3, 6254.4, 6254.20, 6254.22, 6254.25), these exceptions are construed narrowly (Cal. Const., art. I, § 3, subd. (b)(2); City ofHemet v. Superior Court (1995) 37 Cal.App.4th 1411, 1425; Rogers v.Superior Court (1993) 19 Cal.App.4th 469, 476; 88 Ops.Cal.Atty.Gen. 153,157-158 (2005); 79 Ops.Cal.Atty.Gen. 269, 271 (1996)). Also, section 6255 allows a public agency to withhold disclosure of a record upon a showing that "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (See Michaelis, Montanari Johnson v. Superior Court (2006) 38 Cal.4th 1065, 1071-1076;Haynie v. Superior Court (2001) 26 Cal.4th 1061, 1074;88 Ops.Cal.Atty.Gen., supra, at p. 163; 84 Ops.Cal.Atty.Gen. 55, 56-60
(2001); 81 Ops.Cal.Atty.Gen. 383, 386-388 (1998).)
We have not been directed to any statutory provision, within the Act or outside of it, that establishes an exemption for the county recorder's accounting records in question, nor are we aware of any such exemption. In 51 Ops.Cal.Atty.Gen. 62, 64-65 (1968), we dealt with the requirements of the predecessor statutes to sections 11932 and 11933 and concluded that a separate "tax statement" filed with and maintained by the county recorder pursuant to a county ordinance was subject to public inspection. Our conclusion was intended to cover "the recorder's internal records of the amount of tax paid." (Id. at p. 62, fn. 1.) While numerous changes have been made in the governing statutes since our 1968 opinion, the state policy favoring "the public's right to know" has only grown stronger in the interim.
In particular, the people adopted a constitutional amendment in 2004 — "Proposition 59" — that added subdivision (b) to section 3 of article I of the Constitution. This new provision requires that statutes be "narrowly construed" if they limit "the right of access" to information concerning the conduct of the people's business. (See89 Ops.Cal.Atty.Gen. 110, 115 (2006); 87 Ops.Cal.Atty.Gen., supra, at pp. 186-188.) While this constitutional rule of construction expressly leaves intact any "constitutional or statutory exception to the right of access to public records" in existence before the effective date of Proposition 59 (Cal. Const., art. I, § 3, subd. (b)(5); see Shapiro v.Board of Directors (2005) *Page 6 134 Cal.App.4th 170, 181, fn. 14; 89 Ops.Cal.Atty.Gen., supra, at pp. 115-116; 88 Ops.Cal.Atty.Gen. 16, 20-22 (2005);87 Ops.Cal.Atty.Gen., supra, at pp. 186-188), no such exemption protects the county recorder's accounting records.
Receipts prepared and retained by the recorder's office that reflect the payment of documentary transfer taxes would be evidence of the manner and extent to which such taxes have been assessed and paid; hence, they are "public records" concerning a matter of interest to the public. (See 51 Ops.Cal.Atty.Gen., supra, at p. 65.) Accordingly, they are subject to public inspection under the Act. (See, e.g., Times MirrorCo. v. Superior Court, supra, 53 Cal.3d at pp. 1338-1339; CBS, Inc. v.Block, supra, 42 Cal.3d at pp. 651-655; Marylander v. Superior Court,supra, 81 Cal.App.4th at p. 1125; New York Times Co. v. SuperiorCourt (1997) 52 Cal.App.4th 97, 104-104;73 Ops.Cal.Atty.Gen., supra, at p. 237.)
Depending upon the contents of the receipts and any accompanying documents, there may be some necessity for the redaction of certain private or financial information (for example, bank account or credit card numbers) before the materials are made available for inspection. (See § 6255; Gordon v. Superior Court (1997) 55 Cal.App.4th 1546,1557-1558 [checks may reveal confidential personal financial information]; see also Valley Bank of Nevada v. Superior Court (1975)15 Cal.3d 652, 656 [state's constitutional privacy right "extends to one's confidential financial affairs"]; 82 Ops.Cal.Atty.Gen. 159, 160-162
(1999); cf. 87 Ops.Cal.Atty.Gen., supra, at pp. 184-186 [private check obtained through administrative subpoena constitutes confidential financial information exempt from public disclosure under section 11183, which is incorporated into the Act by section 6254, subdivision (k)].) But we find that any such records, at least insofar as they show the amount of the documentary transfer tax paid, must be made available by the county recorder for inspection upon a proper request. (See, e.g.,Haynie v. Superior Court (2001) 26 Cal.4th 1061, 1068; Versaci v.Superior Court (2005) 127 Cal.App.4th 805, 813.)
Finally, we note that our interpretation provides only a limited right of privacy for property owners in shielding documentary transfer tax amounts from public view under the terms of sections 11932 and 11933. If they wish to do so, property owners may prevent the recording of such information in the county's official property records, where conveyance records are routinely and readily available to the general public. But that same tax information will also be contained in the county recorder's accounting records and must, under the Act, be made available for public inspection upon a proper request. We addressed this distinction in our 1968 opinion involving former Revenue and Taxation Code section 11934, the predecessor statute of sections 11932 and 11933:
 There appears to be little doubt that the objective of the procedure set forth in Revenue and Taxation Code section 11934 is to offer the party requesting recordation an opportunity to prevent the amount of the tax from appearing in *Page 7 
the book in which the transfer document is recorded, which is an official record and readily subject to public inspection. The issue is whether this procedure evidences a broader legislative objective and is intended to prevent any document containing the tax information from being subject to public inspection. We do not believe that it does.
(51 Ops.Cal.Atty.Gen., supra, at p. 63.) We concluded:
 Although we understand that some county officers have construed Revenue and Taxation Code section 11934 as precluding public inspection of the tax statement, we believe this construction is contrary to the general legislative policy expressed in Government Code section 1227 [the Act's predecessor statute]. Statutes which are in derogation of this policy should be construed narrowly. We do not find in the language or legislative history of Revenue and Taxation Code section 11934 reasonable evidence to indicate that the Legislature intended to impose limitations on the inspection of tax data broader than that which would result by not including such data in the books in which the transfer documents are recorded.
(Id. at p. 65, fn. omitted.) As we have explained above, California's policy favoring public disclosure of governmental records is even stronger now than it was in 1968. Accordingly, having found no clear and express contrary statement from the Legislature, we reaffirm our conclusion that the statutory "separate statement" option, now set forth in sections 11932 and 11933, offers only limited privacy protection for property owners; it does not make the documentary transfer tax amount confidential, nor does it establish a blanket exemption from public disclosure for such information.
We conclude in answer to the second question that when the county recorder has not made a copy of the separate paper showing the documentary transfer tax amount, but the recorder's accounting records include a payment receipt showing the tax amount, the recorder's receipt is subject to inspection under the Act.
[1] All further references to the Revenue and Taxation Code prior to footnote 3 are by section number only.
[2] Government Code section 27321 directs the recorder to return the original "to the person named in the instrument for return mail, and if no such person is named, to the party leaving it for record."
[3] All further references to the Government Code are by section number only. *Page 1