[No. B156383. Second Dist., Div. Two. July 18, 2002.]

DEPARTMENT OF MOTOR VEHICLES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

**COUNSEL**

Bill Lockyer, Attorney General, Silvia M. Diaz and Jessica K. Frazier, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, George M. Palmer, Head Deputy District Attorney, Brentford J. Ferreira and Shirley S. N. Sun, Deputy District Attorneys, for Real Party in Interest The People.

No appearance for Real Party in Interest Teodorico Manliclic Carmona.

## OPINION

### ASHMANN-GERST, J.—

#### INTRODUCTION

Petitioner, Department of Motor Vehicles (the DMV), seeks a writ of mandate directing respondent court to vacate its order requiring it to produce to the People its unredacted records concerning real party in interest, Teodorico Manliclic Carmona (Carmona), who is charged with vehicular homicide arising out of a May 24, 2000, traffic collision. The People issued a subpoena duces tecum for the records. The DMV opposed the subpoena, claiming privileges under Vehicle Code section 1808.5[1] and Evidence Code section 1040, subdivision (b)(2). Carmona joined in the People's request that the DMV produce the records.[2]

The DMV contends that entries in Carmona's driving record relating to his physical or mental condition are absolutely privileged (1) under section 1808.5, which provides, in relevant part: "all records of the department relating to the physical or mental condition of any person . . . are confidential and not open to public inspection"; and (2) under Evidence Code section 1040, subdivision (b), the official information privilege.

We hold that: (1) section 1808.5 does not create a privilege, independent of Evidence Code section 1040, to withhold information required to be produced by subpoena; (2) although the DMV established that its claim of privilege involved "official information" within the meaning of Evidence Code section 1040, section 1808.5 does not forbid disclosure of such official information within the meaning of Evidence Code section 1040, subdivision (b)(1); and (3) under Evidence Code section 1040, subdivision (b)(2), the necessity for disclosure of complete copies of Carmona's driving records outweighs the DMV's interest in preserving confidentiality. Accordingly, we find that the trial court's order requiring the DMV to produce to the People

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

[2] Carmona made no appearance in this proceeding.

the entirety of Carmona's driving records was a sound exercise of discretion, and we deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

On May 24, 2000, Carmona, while traveling on the 101 Freeway, clipped one car, rear-ended another a mile later, and then hit a third vehicle, a utility truck, causing it to overturn and kill the driver. Witnesses reported Carmona to have been making unsafe and precipitous lane changes and to have been driving at excessive speeds. A short distance after hitting the utility truck, Carmona's car stopped in the center divider. A witness who encountered Carmona shortly after his car stopped described him as clammy, bluish, and staring blankly.

Carmona was transported for medical care. While hospitalized, he made a statement to a California Highway Patrol (CHP) officer investigating the accident. That statement, as well as witness statements, was contained in an accident report generated by the CHP and filed with the DMV.

Subsequently, Carmona was charged with vehicular homicide. On August 2, 2001, the People served the DMV with a business records subpoena duces tecum (the subpoena) requiring it to produce: "All documents maintained by DMV regarding driving record of Teodorico Manliclic Carmona . . . including: Copy of file of physical investigation/lapse of consciousness, priority re-examination, interview contact 8-16-99, tape recording and official transcript of hearing, all documents submitted, including any submitted or referenced by Mr. Carmona; and Copy of file of fatal, including same of all [sic]; and certified copy of driver's record/green & white printout; and certified copy of H6 printout; and any and all other documents or related documents maintained by your agency concerning Mr. Carmona's driving record." The documents commanded by the subpoena were represented to be material to the issues in the case because they were "[n]eeded for successful prosecution of the above-referenced vehicular homicide case."

On August 24, 2001, the DMV responded to the subpoena by transmitting to the clerk of the court an unsigned custodian of records declaration purporting to transmit "true and correct copies of available records." A letter accompanying the records and the custodian of records declaration provided: "Your attention is respectfully directed to the provisions of Section 1808.5 of the Vehicle Code regarding the confidentiality of records of the department relating to physical or mental conditions and Section 1653.5(e) V.C. regarding confidentiality of Social Security Numbers. [¶] You may also

notice that portions of the attached material deemed confidential have been redacted, as they apply to procedures for updating our database." Neither the custodian of records declaration nor the letter identified what had been redacted or otherwise withheld under a claim of confidentiality.

### A. *The Records Produced by the DMV*

The DMV produced 96 pages of documents in response to the People's subpoena for Carmona's driving record, of which 18 pages appear to be redacted. The redactions are contained in documents discussing Carmona's medical history, including records related to administrative proceedings placing his driving privileges on medical probation and revoking them.

### B. *Trial Court Proceeding on the DMV's Motion*

On October 24, 2001, in the criminal action, the DMV filed a noticed "Motion for Order Modifying Subpoena, or, in the Alternative for a Protective Order," citing to Code of Civil Procedure section 1987.1 (motion to quash), section 1808.5 (DMV records of medical and physical condition confidential), and Evidence Code section 1040, subdivision (b) (official information privilege), seeking an order relieving it from producing the redacted information. The DMV contended that section 1808.5 rendered the redacted information confidential and not subject to disclosure, disclosure was against the public interest in driver safety because confidentiality of medical evaluations was necessary to ensure accurate reporting, the information was available from nonprivileged sources, and Carmona's consent to disclosure had no effect on the DMV's independent assertion of privilege.

The People filed a joint opposition to the motion and a motion to compel, in which it informed the court that Carmona intended to pursue an affirmative defense of unconsciousness due to diabetic coma, and that the voluntariness of any unconsciousness would be at issue in the pending criminal proceeding. The People contended plausible justification had been established for the subpoenaed documents. Carmona had been involved in a 1999 traffic accident, which he had attributed to his diabetic condition. Therefore, evidence of his knowledge of his condition, including his prior statements about it, as well as his eating, sleeping, driving, and medication practices, were material to whether he had knowingly failed to exercise the caution of a similarly situated reasonably prudent driver. The People disputed that section 1808.5 created an absolute privilege, and maintained that, on balance, the public interest was best served by disclosure.

The DMV's reply papers were supported by a declaration by the chief of the DMV's information services branch, stating, in pertinent part: "Pursuant

to Vehicle Code section 1808.5, and departmental practice physical and mental condition record information is not disclosed to anyone, including the court, law enforcement agency, and other governmental agency."

On January 24, 2002, the DMV's motion was heard. Carmona joined with the People in seeking that the DMV be required to produce unredacted copies of his driving record, and on that basis, the trial court ordered the DMV to comply in full with the People's subpoena.

On February 11, 2002, the DMV filed a petition for writ of mandate, contending that section 1808.5 and Evidence Code section 1040 created statutory privileges to withhold the medical information contained in Carmona's driving record, unaffected by Carmona's consent to release the information. We stayed production of the DMV's records, issued an order to show cause, and set the matter for hearing.

STANDARD OF REVIEW

■ Appellate review of issues of statutory construction is de novo. (*Redevelopment Agency v. County of Los Angeles* (1999) 75 Cal.App.4th 68, 74 [89 Cal.Rptr.2d 10].)

■ Appellate review of discovery orders applying the law to facts is under the abuse of discretion standard. We set aside the court's order granting or denying discovery only where it has been demonstrated that discretion was abused. (*People v. Superior Court (Baez)* (2000) 79 Cal.App.4th 1177, 1186 [94 Cal.Rptr.2d 706].) Discretion is abused only when the trial court " 'exceeds the bounds of reason, all of the circumstances before it being considered.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193], quoting *Loomis v. Loomis* (1960) 181 Cal.App.2d 345, 348 [5 Cal.Rptr. 550].)

THE PARTIES' CONTENTIONS

The DMV contends that the trial court abused its discretion in ordering it to disclose the entirety of Carmona's records, because section 1808.5 requires it to keep driver medical information absolutely confidential, section 1808.5 and Evidence Code section 1040 set forth absolute privileges with respect to driver medical information, and even in the absence of an absolute privilege, the public interest in maintaining confidentiality of medical information in Carmona's records outweighs the need for disclosure.

The People assert that Evidence Code section 1040 is the only statutory privilege under which medical information in the DMV's records can be

withheld, the DMV's information concerning Carmona's medical condition is conditionally privileged under Evidence Code section 1040, subdivision (b)(2), and the trial court acted properly in ordering the DMV to produce unredacted copies of its records, because the People and Carmona's joint interest in disclosure of the records outweighs the DMV's interest in maintaining their confidentiality.

## DISCUSSION

■ The People described the information it sought with specificity and stated good cause for its production. The DMV then bore the burden of establishing its entitlement to its claim of privilege (*D.I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723, 729 [36 Cal.Rptr. 468, 388 P.2d 700]) by proving the preliminary facts to show that the privilege applied. (*Mahoney v. Superior Court* (1983) 142 Cal.App.3d 937, 941 [191 Cal.Rptr. 425].)

■ Evidentiary privileges are codified deviations from the centuries-old common law principle that " ' "the public . . . has a right to every man's evidence." ' [Citation.]" (*Trammel v. United States* (1980) 445 U.S. 40, 50-51 [100 S.Ct. 906, 912, 63 L.Ed.2d 186].) Under California law, privileges are strictly statutory. Absent a statutory privilege, no person has a privilege to refuse to produce a writing in a legal proceeding. (Evid. Code, §§ 910, 911, subd. (b).)

The Evidence Code generally "establishes the law of this state respecting the subject to which it relates" (Evid. Code, § 2), and absent a statute stating otherwise, the Evidence Code privilege statutes apply to all legal "proceedings" in which a claim of privilege is made after December 31, 1966. (Evid. Code, §§ 12, subds. (a) & (c), 910.)

In sum, absent either an Evidence Code section establishing a privilege for the DMV to refuse to produce a writing, or a statute expressly creating such a privilege outside the Evidence Code, no such privilege exists. (Evid. Code, §§ 2, 12, subd. (c), 911, subd. (b).)

### A. *Section 1808.5*

■ The DMV contends that the language in section 1808.5, deeming "all records of the [DMV] relating to the physical or mental condition of any

person . . . confidential and not open to public inspection,"[3] creates a privilege independent of the Evidence Code. We disagree. Characterizing information as confidential from public inspection is not the equivalent of establishing a privilege in a legal proceeding. Section 1808.5 does not use the term "privilege" nor does it invoke the concept of privilege as that term used in the Evidence Code or discovery statutes. (Accord, *Davies v. Superior Court* (1984) 36 Cal.3d 291, 298-299 [204 Cal.Rptr. 154, 682 P.2d 349] [interpreting § 20012].)

■ We are constrained to interpret statutes by examining their actual language. "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]" (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) "[I]t is the language of the statute itself that has successfully braved the legislative gauntlet. It is the language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed 'into law' by the Governor. . . . [¶] . . . [¶] If the meaning is without ambiguity, doubt or uncertainty, then the language controls." (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238-1239 [8 Cal.Rptr.2d 298].)

■ Moreover, in determining legislative intent, our responsibility is to construe the words of a statute "in context in light of the nature and obvious purpose of the statute where they appear. [Citation.]" (*Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 354 [257 Cal.Rptr. 356].) In doing so, we must harmonize statutes and statutory sections regarding the same subject, both internally and with each other, to the fullest extent possible. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

■ The obvious and stated purpose of section 1808.5 is to render physical and mental condition information "confidential and not open to public inspection." Placing this language in context confirms that it merely provides a limitation on public disclosure, not an evidentiary privilege.

---

[3]Section 1808.5 provides: "Except as provided in Section 22511.58 [designation of off-street parking for disabled persons], all records of the department relating to the physical or mental condition of any person, and convictions for any offense involving the use or possession of controlled substances under Division 10 (commencing with Section 11000) of the Health and Safety Code not arising from circumstances involving a motor vehicle, are confidential and not open to public inspection."

In general, the records of the DMV "shall be open to public inspection during office hours." (§ 1808, subd. (a).) The DMV is authorized to sell the information in its files and to charge for providing the inspection or sale of information. (§ 1810, subd. (a).) The Legislature has enacted limitations and exceptions to the inspection and sale of information in the DMV's files. These limitations and exceptions appear at sections 1808.2 through 1808.24. Section 1808.5, declaring physical and mental condition information confidential from public inspection, is placed with the statutes declaring certain home addresses confidential.

Specifically, sections 1808.2, 1808.4, and 1808.6 declare that the home addresses of identified public officials and public employees, and of their spouses and children, are "confidential." A confidential address under section 1808.2 is "confidential" without qualification. A confidential address under sections 1808.4, subdivision (b), and 1808.6, subdivision (b), "shall not be disclosed to any person," except a court, a law enforcement agency, the State Board of Equalization, and "[a]ny governmental agency to which, under any provision of law, information is required to be furnished from records maintained by the department." Section 1808.4 provides an additional exception to confidentiality for "[a]n attorney in a civil or criminal action that demonstrates to a court the need for the home address, if the disclosure is made pursuant to a subpoena." (§ 1808.4, subd. (b)(4).)

Section 1808.21 provides that residence address information is confidential and "shall not be disclosed to any person, except a court, law enforcement agency, or other governmental agency, or as authorized by Section 1808.22 or 1808.23." Section 1808.7 declares confidential the record of a driver's participation in traffic school, driving school, and court-ordered driving instruction, and provides that it "shall not be disclosed to any person, except a court, . . ." Section 1808.24 provides that the DMV's information concerning any motor vehicle liability insurance policy "is confidential and shall not be disclosed to any person," except to a court of competent jurisdiction, a law enforcement or other governmental agency, or parties involved in an accident reported to the DMV.

While these statutes differ in their particulars, they do not show a legislative intent to create a privilege. Collectively, they acknowledge that information confidential for purposes of public inspection may nevertheless be necessary for and subject to disclosure in legal and other official proceedings. In other words, if "confidential" meant "privileged," it would be repugnant to include language allowing for the disclosure of such confidential information. Applying the well-established rules of statutory construction, we find the word "confidential" in section 1808.5 synonymous with the

word "confidential" as used in these statutes. Confidentiality does not equate with privilege.

Accordingly, insofar as the DMV's claim of privilege not to produce Carmona's complete driving record rests upon section 1808.5, we reject it. We then turn our focus to the only statute which arguably could support the DMV's position herein—Evidence Code section 1040, the official information privilege.

### B. *Evidence Code Section 1040*

The DMV claims an absolute privilege under Evidence Code section 1040, subdivision (b), which provides, in relevant part: "(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and: [¶] (1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or [¶] (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; . . ."

### 1. *Evidence Code Section 1040 Establishes a Privilege for Statutorily Defined "Official Information"*

Subdivision (a) of Evidence Code section 1040 defines "official information" within the meaning of the statute as "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made."

The People contend that the DMV failed to establish the preliminary fact of "information acquired in confidence," a threshold burden for claiming a privilege under Evidence Code section 1040. (*Marylander v. Superior* Court (2000) 81 Cal.App.4th 1119, 1128 [97 Cal.Rptr.2d 439].) This argument is not persuasive. We find that medical information can be deemed "acquired in confidence" because it is intrinsically confidential. (*Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669, 678 [156 Cal.Rptr. 55].)

In *County of Orange v. Superior Court* (2000) 79 Cal.App.4th 759 [94 Cal.Rptr.2d 261], the Fourth District Court of Appeal held that an open homicide investigation file was privileged from discovery under Evidence

Code section 1040, subdivision (b)(2), in a related civil suit, notwithstanding that some of the information in the file, such as the plaintiffs' own statements and crime scene evidence obtained in public view, was not " 'acquired in confidence' " in "the literal sense of that term." (*County of Orange v. Superior Court, supra,* at p. 764.) The court, relying on statutory and case authority related to criminal investigative files, concluded that evidence gathered by police as part of an ongoing criminal investigation was "by its nature confidential," (*ibid.*) thereby constituting "official information" within the meaning of Evidence Code section 1040.

Likewise, medical information is by its nature confidential and widely treated as such. "A person's medical profile is an area of privacy infinitely more intimate, more personal in quality and nature than many areas already judicially recognized and protected." (*Board of Medical Quality Assurance v. Gherardini, supra,* 93 Cal.App.3d at p. 678; see also *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 41 [26 Cal.Rptr.2d 834, 865 P.2d 633].) Statutory authority is in accord. (See, e.g., Civ. Code, § 56 et seq. [Confidentiality of Medical Information Act]; Evid. Code, § 992 [physician-patient privilege].) Even our state Constitution recognizes that medical information is confidential and private. (Cal. Const., art. I, § 1.) In fact, pursuant to section 1808.5, the information is confidential and not open to public inspection. Given the broadly recognized confidentiality of medical records, we find that the medical information acquired by the DMV constitutes "official information" within the meaning of Evidence Code section 1040.

> 2. *Section 1808.5 Is Not a Statute That "Forbids Disclosure" Within the Meaning of Evidence Code Section 1040, Subdivision (b)(1)*

Because medical information satisfies the "official information" requirement of Evidence Code section 1040, our next query is whether its disclosure is forbidden by statute. The same reasons that led us to conclude that section 1808.5 does not establish a privilege lead to the conclusion that it is not a statute, within the meaning of Evidence Code section 1040, that "forbids disclosure."

Additionally, section 1808, the general public disclosure statute, demonstrates that a provision that certain records of the DMV are confidential is not equivalent to declaring their disclosure forbidden by law. Section 1808 generally defines which of the DMV's records are open to public disclosure. It provides, in pertinent part: "Except *where a specific provision of law prohibits the disclosure of records or information or provides for confidentiality,* all records of the department relating to the registration of vehicles,

other information contained on an application for a driver's license, abstracts of convictions, and abstracts of accident reports required to be sent to the department in Sacramento, . . . shall be open to public inspection during office hours. . . ." (§ 1808, subd. (a), italics added.)

We understand the use of the disjunctive in section 1808, subdivision (a), to define two separate and different categories of statutes: (1) statutes that "prohibit[] the disclosure of records," and (2) statutes that "provide[] for confidentiality." A statute that "prohibits the disclosure of records" would invoke the absolute privilege of Evidence Code sections 1040 and 1041.[4] A statute that "provides for confidentiality," would not. This is not to say that a statute that "provides for confidentiality" does not express a strong public policy of nondisclosure, but is to say that the policy does not rise to the level of an absolute prohibition, thereby precluding a case-by-case judicial determination that weighs the public policy against disclosure of specified information against a particular party's interest in obtaining that information.

The DMV relies on *Richards v. Superior Court* (1968) 258 Cal.App.2d 635 [65 Cal.Rptr. 917] (*Richards*) for a contrary conclusion.[5] In *Richards*, the court upheld a motion to quash a civil subpoena for medical records and deposition testimony that sought to compel testimony and documents from a physician who, under contract with the State of California Department of Employment, had examined the plaintiff in connection with his claim for disability benefits following the accident that gave rise to his lawsuit. The court held that notwithstanding the plaintiff's "consent" to the disclosure of the medical information by having tendered the issue of his medical condition, the Department of Employment had an absolute privilege under Evidence Code section 1040, subdivision (b)(1), and Unemployment Insurance Code sections 2111 and 2714,[6] not to produce the examining physician and his records.

We are unpersuaded by *Richards* for several reasons. First, *Richards* expressly limits its holding to its facts. (*Richards, supra,* 258 Cal.App.2d at

[4]Evidence Code section 1040, subdivision (b)(1), the official information privilege, and Evidence Code section 1041, subdivision (a)(1), the privilege for the identity of an informer, contain the same language: "Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; . . ."

[5]*Richards* was the basis of a 1972 Attorney General Opinion (55 Ops.Cal.Atty.Gen. 122, 123-124 (1972)) which concluded that DMV license information regarding visual acuity "is confidential and not subject to public disclosure." The opinion advised that if the DMV had a "real interest in nondisclosure" in a particular proceeding in which a subpoena had issued for the information, it could assert its privilege to withhold it. (*Id.* at p. 124.)

[6]As quoted in *Richards, supra,* 258 Cal.App.2d at page 637, Unemployment Insurance Code section 2111 provided: " 'Except as otherwise provided in Section 1094 information obtained in the course of administration of this division is confidential and shall not be published or open to public inspection in any manner. Any director, deputy director, member

p. 637.) Second, *Richards's* conclusion that former Unemployment Insurance Code sections 2111 and 2714 create an absolute privilege under Evidence Code section 1040, subdivision (b)(1), is inconsistent with its comment that a different result might be reached if the subject of the medical records were seeking the records for her own benefit. (*Richards, supra,* at p. 638, fn. 2.) We do not agree with *Richards's* conclusion that "whether a statute prohibits disclosure is a matter of interpretation of that statute *as applied to the case in which disclosure is sought.*" (*Id.* at p. 638, fn. omitted.) In our view, whether disclosure of specified official information is prohibited by statute is a matter of statutory construction, and the weighing of interests is the essence of a conditional, not an absolute, privilege. Third, the language contained in section 1808.5 is entirely different from that of former Unemployment Insurance Code sections 2111 and 2714, at issue in *Richards.* In particular, Unemployment Insurance Code section 2714, by declaring Department of Employment medical information to be inadmissible in any proceeding not arising under the Unemployment Insurance Code division related to disability benefits, expressed a much stronger public policy against public disclosure than does section 1808.5.[7]

Finally, the DMV's own statements in the record demonstrate that section 1808.5 does not, in fact, forbid the disclosure of medical information in its records. On August 18, 1999, the DMV issued a notice of decision of medical probation that placed Carmona's driver's license on medical probation. Accompanying the decision was an advisement that Carmona had a right to a further hearing, the right to be represented by any person of his choosing at the hearing, and the right to inspect and copy the documents related to the DMV's decision. The notice of decision, citing section 1808.5, also informed Carmona that records relating to his physical or mental condition would be released with his signed consent. This notice is antithetical to any claim that the DMV was forbidden by statute to release documents concerning Carmona's medical condition.

---

of the Appeals Board, member of the State Advisory Council or employee of the department who violates this section is guilty of a misdemeanor.' "

Likewise, so far as was relevant to *Richards, supra,* 258 Cal.App.2d at page 637, Unemployment Insurance Code section 2714 provided: " 'All medical records of the department . . . shall be confidential and shall not be published or be open to public inspection in any manner revealing the identity of the claimant, or the nature or cause of his disability. Such records are not admissible in evidence in any action or special proceeding other that [*sic*] arising under this division. . . .' "

[7]The two Unemployment Insurance Code sections that *Richards* concluded created an absolute privilege under Evidence Code section 1040 subsequently were amended. Unemployment Insurance Code section 2111, as currently enacted, does not declare violation of confidentiality a misdemeanor. Unemployment Insurance Code section 2714 does not declare the department's medical information inadmissible except in proceedings under the division.

### 3. *The Trial Court Did Not Abuse Its Discretion*

The DMV's only remaining colorable claim of privilege is under Evidence Code section 1040, subdivision (b)(2), which required the trial court to determine whether there is a "necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice."

The People and Carmona have an interest in a document that is relevant to Carmona's defense to the vehicular homicide charge. "A criminal defendant's right to discovery . . . 'is based on the "fundamental proposition that [an accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." ' " (*People v. Luttenberger* (1990) 50 Cal.3d 1, 17 [265 Cal.Rptr. 690, 784 P.2d 633].) Although Carmona did not initiate the production of the DMV's records, by joining in the People's motion, Carmona asserted his own right to their discovery. The DMV's countervailing interest is its ability to "assure physicians that, when they are asked to submit to the DMV a candid evaluation of the safety risks presented by a driver's medical condition, that evaluation will then not be disclosed to the driver or anyone else."

Under the circumstances of this case, we conclude that the DMV's interest is outweighed by the People's and Carmona's interests herein. In August 1999, following an administrative proceeding, the DMV limited Carmona's privilege to drive by placing his license on medical probation. As a consequence, the DMV was required to and did make the records justifying its decision available to Carmona, including confidential documents under section 1808.5. (§ 14100.) The DMV's interest in confidentiality is no greater a year later, when Carmona's liberty, not his license, is at risk.

### DISPOSITION

The petition for writ of mandate is denied. The order to show cause is discharged, and the stay of the order requiring the DMV to produce its entire file of documents related to Carmona's driver's license is dissolved.

Boren, P. J., and Nott, J., concurred.