[No. B216847. Second Dist., Div. Seven. Aug. 16, 2010.]

LOS ANGELES UNIFIED SCHOOL DISTRICT, Cross-complainant and Appellant, v.
TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA PENSION PLAN, Cross-defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part III.B. (ERISA Preemption).

COUNSEL

Colin E. Barr, Sima Salek and Shireen Mohsenzadegan for Cross-complainant and Appellant.

Christopher M. Laquer and J. Paul Moorhead for Cross-defendant and Respondent.

OPINION

ZELON, J.—

## I. INTRODUCTION

Appellant Los Angeles Unified School District (LAUSD or the District) sought a judicial declaration that Labor Code section 1776, subdivision (e)

prohibited it from producing personal employee information contained in third party certified payroll records. After holding a bench trial, the court ruled in favor of respondent. Appellant now appeals, arguing that it has an absolute privilege to withhold the information at issue. We disagree and conclude that the information is only subject to a conditional privilege.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

A.  *The LAUSD Project Stabilization Agreement and California's Certified Payroll Record Requirements*

### 1.  *The LAUSD Project Stabilization Agreement*

The LAUSD and numerous unions are signatories to the "Project Stabilization Agreement" (PSA), which is a construction labor agreement that is intended to promote the timely completion of LAUSD public works projects. The agreement is binding on contractors who enter into construction contracts with the LAUSD and mandates that they pay their laborers the prevailing wage rate set by the Department of Industrial Relations. In addition, contractors are required to provide contributions for employee fringe benefits, which are paid directly to various trusts that administer the employee benefits programs. The trusts, in turn, are responsible for allocating the benefits to the contractors' employees.

### 2.  *California's Certified Payroll Records Requirements*

Labor Code section 1776, subdivision (a)[1] requires contractors who enter into public works contracts to maintain certified payroll records (CPR's) that show, among other things, the name, address, Social Security number, work classification and hours worked for each employee. (§ 1776, subd. (a).) Contractors are required to make copies of CPR's available to their employees, the body that awarded the public works project (the awarding agency) and various California labor agencies. (§ 1776, subd. (b)(1) & (2).) Section 1776 further provides that "the public" may inspect the awarding agency's copies of contractor CPR's (§ 1776, subd. (b)(3)), but directs that such copies "shall be marked or obliterated to prevent disclosure of an individual's name, address, and social security number." (§ 1776, subd. (e).)

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

### B. *Summary of the Proceedings Below*

On April 23, 2008, the trustees of the Southern California IBEW-NECA Pension Plan and various other parties[2] (collectively, Trustees) filed a complaint against the LAUSD and Integrated/TEC (Integrated). The complaint alleged that Integrated, which was a construction contractor working for the District, violated the terms of the PSA by failing to pay the Trustees approximately $20,000 in employee fringe benefits. The complaint also sought an order directing the LAUSD to withhold funds from Integrated in an amount equal to the unpaid fringe benefits.

Shortly thereafter, on June 6, 2008, the LAUSD filed a cross-complaint for declaratory relief against the Trustees seeking a declaration that section 1776, subdivision (e) prohibited the LAUSD from producing personal employee information contained in Integrated's CPR's, including the employees' names, Social Security numbers and addresses (personal employee information). The declaratory relief claim was intended to resolve an ongoing dispute with the Trustees regarding the effect of section 1776, subdivision (e). In numerous prior lawsuits involving unpaid fringe benefits, the Trustees had filed document subpoenas against the LAUSD requesting unredacted contractor CPR's that showed the personal employee information. The Trustees contended that this information was needed to properly allocate fringe benefits to the contractors' employees. In each case, the LAUSD unsuccessfully argued that, pursuant to section 1776, subdivision (e), the personal employee information was privileged and could not be produced. The LAUSD's declaratory relief claim in the current litigation was brought to clarify whether the personal employee information contained within its CPR's was privileged pursuant to section 1776, subdivision (e), and therefore not subject to discovery.

After the LAUSD filed its cross-complaint, the Trustees obtained payroll information that enabled them to determine the specific amount that Integrated owed for unpaid employee fringe benefits. Integrated subsequently agreed to pay the outstanding benefits contributions and the Trustees dismissed their complaint against both the LAUSD and Integrated. The LAUSD, however, declined to dismiss its declaratory relief action, arguing that the parties needed to determine the effect of section 1776, subdivision (e) to

---

[2] The additional parties include the trustees of the Southern California IBEW-NECA Health Trust Fund, trustees of the Los Angeles County Electrical Education and Training Trust Fund, Trustees of the National Electrical Benefit Fund, trustees of the Southern California IBEW-NECA Labor-Management Cooperation Committee, the Los Angeles Electrical Workers Credit Union and the Contract Compliance Fund.

avoid future discovery disputes regarding the production of unredacted CPR's. In support, the LAUSD identified eight lawsuits filed by the Trustees since 2007 in which the parties had litigated the identical discovery issue. The trial court decided to proceed with the declaratory relief action and held a bench trial to resolve whether California's discovery statutes required the LAUSD to produce unredacted copies of third party CPR's.

The only witness called to testify at trial was Joanne Keller, who was responsible for overseeing the collection and allocation of employee fringe benefits for the Southern California IBEW-NECA Pension Plan (Pension Plan). Keller began her testimony by explaining that contractors would typically submit contribution reports to the Pension Plan that included the name, Social Security number, and hours worked for each of the contractors' employees. The Pension Plan used those reports for two purposes: (1) to calculate the amount the contractor owed for employee fringe benefits, and (2) to allocate those benefits to plan participants.

If a contractor failed to provide a contribution report, the Pension Plan would attempt to collect the employee information by requesting CPR's directly from the contractor. If a contractor refused or was otherwise unable to provide copies of its CPR's, the Pension Plan would typically seek unredacted versions of the records from the awarding agency. However, as a result of section 1776, subdivision (e), in many cases, the awarding agency would only agree to produce redacted CPR's that withheld the personal employee information. Keller stated that although the Pension Plan could use redacted CPR's to calculate the amount that a contractor owed for fringe benefits, the redacted records did not provide sufficient information to allocate the benefits to plan participants.

Keller further testified that if a contractor could not produce payroll records, it was possible for the Pension Plan to collect the personal employee information without acquiring the awarding agency's unredacted CPR's. Specifically, Keller explained that the Pension Plan had the authority to audit contractors, which enabled it to review pay stubs, paychecks and other documents containing the employees' personal information.[3] According to Keller, the Pension Plan generally tried to avoid conducting audits, explaining that: "In most instances . . . you try to use the most expeditious manner in

---

[3] The PSA requires that contractors submit to the written terms of the applicable trust agreement that details the manner in which contractors are to pay employment fringe benefits into the trust. In this case, the applicable trust agreement contains a clause that authorizes the trust to audit contractors.

terms of getting the information so you can apply the monies and the credits to the employees as quickly as possible. An audit of an employer is a much more labor intensive, longer in duration period to extract that same information which . . . we know . . . is readily available through the awarding agency."

Following the trial, the court issued a statement of decision ruling that "[i]f Section 1776(e) is enforceable in accordance with the plain meaning and legislative intent of the statute, the District would be compelled to redact certified payroll records produced to the Trustees such that the names and social security numbers of the individual workers would be deleted." The court further concluded, however, that the Trustees' "need for unredacted certified payroll records from the District outweighs the workers constitutional privacy interests" in the personal information contained in the CPR's. As a result, the court ruled that, despite the language of section 1776, subdivision (e), the LAUSD was required to produce unredacted versions of third party CPR's.[4]

## III.  DISCUSSION

### A.  *Personal Employee Information Contained Within an Awarding Agency's Copies of Certified Payroll Records Is Subject to a Conditional Privilege*

The purpose of this appeal is to resolve a recurring discovery dispute regarding the effect of section 1776, subdivision (e). The LAUSD contends that subdivision (e), in conjunction with Evidence Code section 1040, creates an absolute privilege that permits the District to redact personal employee information contained in contractor CPR's. The Trustees, on the other hand, argue that the California Discovery Act requires awarding agencies such as the LAUSD to produce unredacted CPR's in cases where a trust demonstrates that it needs the information to allocate benefits to its plan participants. For the reasons that follow, we conclude that Evidence Code section 1040 and section 1776, subdivision (e) establish only a conditional privilege.

#### 1.  *Section 1776, Subdivision (e) Does Not Establish an Absolute Privilege*

Under California's discovery statutes, "information is discoverable if it is unprivileged and is either relevant to the subject matter of the action or

---

[4] Because the Trustees dismissed their complaint against the LAUSD and Integrated before the bench trial began, the LAUSD was not actually ordered or required to produce anything.

reasonably calculated to reveal admissible evidence." (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 655–656 [125 Cal.Rptr. 553, 542 P.2d 977]; see also Code Civ. Proc., § 2017.010.) Discovery "privileges are strictly statutory. Absent a statutory privilege, no person has a privilege to refuse to produce a writing in a legal proceeding." (*Department of Motor Vehicles v. Superior Court* (2002) 100 Cal.App.4th 363, 370 [122 Cal.Rptr.2d 504] (*DMV*); see also *Valley Bank of Nevada, supra*, 15 Cal.3d at p. 656.) "The party claiming a privilege shoulders the burden of showing that the evidence it seeks to suppress falls within the terms of an applicable [privilege] statute." (*HLC Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 59 [24 Cal.Rptr.3d 199, 105 P.3d 560]; see also *People v. Superior Court* (*Barrett*) (2000) 80 Cal.App.4th 1305, 1317 [96 Cal.Rptr.2d 264] ["The burden is on the governmental agency to demonstrate the [official information] privilege."].)

The LAUSD argues that personal employee information contained within its copies of third party CPR's is absolutely privileged pursuant to Evidence Code section 1040, which states:

"(a) . . . 'official information' means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information . . . if the privilege is claimed by a person authorized by the public entity to do so and:

"(1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . ."

Section 1040 " 'establishes two different privileges [for "official information"]—an absolute privilege if disclosure is forbidden by a federal or state statute (subd. (b)(1)), and a conditional privilege in all other cases pursuant to which privilege attaches when the court determines . . . that disclosure is against the public interest (subd. (b)(2)). [Citation.]' " (*County of San Diego v. Superior Court* (1986) 176 Cal.App.3d 1009, 1018–1019 [222 Cal.Rptr. 484].) The LAUSD contends that personal employee information contained in third party CPR's falls within subdivision (b)(1) of Evidence Code section 1040 because it is "official information" whose disclosure is forbidden by

Labor Code section 1776, subdivision (e). The parties do not dispute that the personal employee information constitutes "official information." Therefore, the question on review is whether section 1776, subdivision (e) is a statute that forbids disclosure within the meaning of Evidence Code section 1040, subdivision (b)(1).[5]

Section 1776, subdivision (b)(3) states that an awarding agency's copies of third party CPR's "shall be made available upon request by the public for inspection or for copies thereof." Section 1776, subdivision (e), in turn, requires that "Any copy of records made available for inspection as copies and furnished upon request to the public or any public agency by the awarding body . . . shall be marked or obliterated to prevent disclosure of an individual's name, address, and social security number." Thus, the statute gives the public the right to inspect an awarding agency's copies of third party CPR's, but requires that personal employee information contained within those records remain confidential.

California courts have repeatedly held that statutes which simply characterize information as "confidential" or otherwise limit its public disclosure do not create an absolute privilege within the meaning of Evidence Code section 1040, subdivision (b)(1). For example, in *DMV, supra,* 100 Cal.App.4th 363, the Department of Motor Vehicles argued that Vehicle Code section 1808.5, which states that records pertaining to an individual's mental condition are " 'confidential and not open to public inspection,' " established an absolute privilege to withhold such information. (*DMV,* at p. 366.) The court disagreed, explaining that "[c]haracterizing information as confidential from public inspection is not the equivalent of establishing a privilege in a legal proceeding." (*Id.* at p. 371.) The court went on to rule that "section 1808.5 . . . is not a statute, within the meaning of Evidence Code section 1040, that 'forbids disclosure.' " (*Id.* at p. 374.) Similarly, in *White v. Superior Court* (2002) 102 Cal.App.4th Supp. 1 [126 Cal.Rptr.2d 207] (*White*), the Inspector General claimed privilege over certain materials pursuant to a statute stating that the information was " 'deemed confidential for use by the Inspector General . . . only.' " (*Id.* at p. Supp. 5.) The appellate court ruled that the statute did not establish an absolute privilege within the meaning of Evidence Code section 1040, stating that "[i]nformation that is confidential is protected against unrestricted public inspection, but limited

---

[5] In the proceedings below, the parties framed the relevant issue as a recurring discovery dispute. Therefore, we consider only whether the redacted personal employee information is privileged under California's discovery statutes and do not decide how section 1776, subdivision (e) would apply in the event that the Trustees requested to inspect an awarding agency's CPR's outside the discovery context.

disclosure is not the equivalent of a privilege against any disclosure. . . . [¶] . . . [¶] . . . Although inspection of the Inspector General's records is restricted by statute, it is not forbidden . . . ." (*White*, at pp. Supp. 5–6.)

In contrast to *DMV* and *White*, appellate courts have found an absolute privilege to exist in cases where a statute not only restricts disclosure, but includes some additional indicia that the Legislature intended to restrict disclosure even in the context of litigation. For example, in *Richards v. Superior Court* (1968) 258 Cal.App.2d 635 [65 Cal.Rptr. 917] (*Richards*), the court considered the effect of a statute directing that certain information was " 'confidential and shall not be published or open to public inspection in any manner.' " (*Id.* at p. 637.) The statute further directed that " '[s]uch records are not admissible in evidence in any action or special proceeding . . . .' " (*Ibid.*) The court concluded that, when considered as a whole, the language of the statute "manifest[s] a clear legislative intent to preserve . . . confidentiality" even where a party seeks the information for evidence at trial. (*Id.* at p. 638.)

In *Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324 [87 Cal.Rptr.2d 813] (*Kleitman*), the defendant argued that the Ralph M. Brown Act (Brown Act; Gov. Code, § 54950 et seq.) "sunshine laws" created an absolute privilege for agency discussions that occurred during a statutorily authorized "closed session." The appellate court began its analysis by reviewing the structure of the Brown Act, which enumerated two instances in which information from a closed session could be disclosed in the context of litigation.[6] (74 Cal.App.4th at pp. 332–333.) The court held that, because the Legislature had specifically described the limited instances in which closed session discussions could be disclosed in litigation, the statute impliedly barred disclosure in any other circumstance. (*Id.* at pp. 334–336 & fn. 9.)

The holdings in *White, DMV, Richards* and *Kleitman* demonstrate that, to qualify for absolute privilege within the meaning of Evidence Code section 1040, a statute must do more than merely make information confidential or limit its disclosure to the public. Rather, the language or structure of the statute must evince a legislative intent to bar disclosure even in the context of litigation. These holdings are consistent with the general rule that privileges are to be "narrowly construed . . . because they operate to prevent the admission of relevant evidence and impede the correct determination of

---

[6] Specifically, the Brown Act provides that (1) minutes from a closed session are subject to in camera review by a trial court when it is alleged that a violation of the Brown Act has occurred during a closed session, and (2) tape recordings of a closed session are subject to disclosure where "there exists a prior judgment that the legislative body held unlawful closed sessions, a court order to make tape recordings, and a factual showing that another violation has occurred . . . ." (*Kleitman, supra,* 74 Cal.App.4th at p. 333.)

issues." (*Saeta v. Superior Court* (2004) 117 Cal.App.4th 261, 272 [11 Cal.Rptr.3d 610].) Moreover, the Legislature has demonstrated that when it intends to preclude information from discovery, it is capable of saying so. (See, e.g., Bus. & Prof. Code, § 4990.30, subd. (j) ["Information provided to the board . . . shall be confidential and shall not be subject to discovery or subpoena . . . ."]; Bus. & Prof. Code, § 2878.1, subd. (b) ["The information reported or disclosed shall be kept confidential . . . and shall not be subject to discovery in civil cases."]; Pen. Code, § 186.11, subd. (e)(2) ["The proceeding shall not be subject to or governed by the provisions of the Civil Discovery Act . . . ."].)

■ In this case, section 1776, subdivision (e) states that, when providing copies of third party CPR's to the public, an awarding agency must redact personal employee information that is imbedded within those records. The statute does not include any language stating that the information is not discoverable or is inadmissible at trial. The language and structure of the statute give no indication that the Legislature intended to limit the circumstances in which personal employee information may be disclosed for the purposes of litigation. Therefore, we conclude that section 1776, subdivision (e) does not forbid disclosure of unredacted CPR's within the meaning of Evidence Code section 1040, subdivision (b)(1).[7]

### 2. *Conditional Privilege Under Evidence Code Section 1040, Subdivision (b)(2)*

As explained above, the parties do not dispute that personal employee information contained in an awarding agency's copies of CPR's is "official information" within the meaning of Evidence Code section 1040. Therefore, although the information is not absolutely privileged, it is subject to the conditional privilege described in Evidence Code section 1040, subdivision (b)(2). (See generally *Marylander v. Superior Court* (2000) 81 Cal.App.4th 1119, 1126 [97 Cal.Rptr.2d 439] ["[i]f the public entity . . . show[s] that the information was acquired in confidence," the conditional privilege in Evid. Code, § 1040, subd. (b)(2) applies].) This conditional privilege requires the trial court to "*weigh* the interests and to sustain the privilege only if ' "there is a necessity for preserving the confidentiality of the information

---

[7] To the extent the LAUSD is arguing that section 1776, subdivision (e) establishes an absolute privilege separate and apart from Evidence Code section 1040, we disagree. The statute does not contain any language indicating that the Legislature intended to create a privilege. It merely requires that an agency keep personal employee information confidential when providing copies of CPR's to the public. Simply put, confidentiality does not equate with privilege. (*DMV, supra,* 100 Cal.App.4th at pp. 371, 373 [rejecting contention that Veh. Code, § 1808.5 created independent privilege because it "does not use the term 'privilege' nor does it invoke the concept of privilege as that term is used in the Evidence Code or discovery statutes"].)

that outweighs the necessity for disclosure in the interest of justice." ' [Citations.]" (*Marylander*, at p. 1126.) Although "[a] statute that makes information confidential expresses a strong public policy against disclosure, . . . it is still necessary to weigh the need for confidentiality against a particular party's interest in obtaining the information." (*White, supra*, 102 Cal.App.4th 1 at p. Supp. 7.)

The question of whether an awarding agency must disclose unredacted CPR's in response to a discovery subpoena cannot be decided in the abstract. However, the Trustees have identified numerous factors that will normally weigh in favor of disclosure when the requesting party is a benefits trust seeking unredacted CPR's for the purpose of allocating fringe benefits to plan participants. First, unlike the general public, the Trustees are entitled to collect the employees' personal information directly from the contractor. Therefore, as noted by the trial court, it is difficult to understand how the employees' privacy interests are compromised when the Trustees obtain this same information through the awarding agency's copies of CPR's. Second, the evidence at trial demonstrated that the Trustees and the entities they do business with are required to protect the employees' personal information from public disclosure. As a result, the Trustees have adopted safeguards to ensure that the personal employee information remains confidential.[8] Third, the Trustees, who have a fiduciary relationship with their plan participants, are usually seeking the personal employee information for the benefit of the employees. Specifically, the Trustees need unredacted CPR's to make certain that employees receive their allotted share of fringe benefits.

We expect that, in cases where these or similar factors are present, the Trustees (and other benefits trusts) will normally be able to demonstrate that their "interest in obtaining [unredacted CPR's]" outweighs "the need for confidentiality."[9] (*White, supra*, 102 Cal.App.4th at p. Supp. 7.)

B. *ERISA Preemption**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[8] Presumably, personal employee information provided in unredacted CPR's can also be safeguarded through a protective order.

[9] That does not mean that a trust will always be entitled to unredacted CPR's or that a trial court may forego the balancing process when the requesting party is a benefits trust. (*Marylander v. Superior Court, supra*, 81 Cal.App.4th at p. 1126 ["A trial court commits error under this section if the court fails to . . . engage in the process of balancing the interests"].) In each case, the trial court must consider a trust's need for the unredacted CPR's and weigh them against the awarding agency's interests in maintaining confidentiality.

*See footnote, *ante*, page 621.

## IV.   DISPOSITION

We affirm, but because the Trustees complaint has been dismissed with prejudice, no further action in this matter is required. Respondent is to recover its costs on appeal.

Woods, Acting P. J., and Jackson, J., concurred.